IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

KELLY J. LUCK,                    )    CASE NO. 3:13 CV 687
                                  )
              Plaintiff,          )
                                  )
                                  )    MAGISTRATE JUDGE
       v.                         )    WILLIAM H. BAUGHMAN, JR.
                                  )
COMMISSIONER OF SOCIAL            )
SECURITY,                         )    **MEMORANDUM OPINION AND**
                                  )    **ORDER**
              Defendant.          )

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  -2-
     A.    Nature of the case and proceedings . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  -2-
     B.    The Commissioner's decision . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  -3-
     C.    Issues presented . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  -5-
     D.    Disposition . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  -5-

Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  -5-
     A.    Standards of review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  -5-
          1.    Substantial evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  -5-
          2.    Treating physician rule and good reasons requirement . . . . . . . .  -7-
          3.    Credibility . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  -14-
     .    Application of standards . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  -17-
          1.    Opinions of acceptable medical sources . . . . . . . . . . . . . . . . . . .  -17-
          2.    Acceptable medical source opinions/physical impairments not related
               to migraines . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  -18-
          3.    Acceptable medical source opinion/emotional/depression . . . . .  -20-
          4.    Other medical source opinions . . . . . . . . . . . . . . . . . . . . . . . . . . .  -25-
          5.    Acceptable medical source opinions related to migraines . . . . .  -27-
          6.    Credibility . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  -29-

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  -31-

## Introduction

**A.** **Nature of the case and proceedings**

This is an action by Kelly J. Luck under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying her application for disability insurance benefits ("DIB").[1]

The parties have consented to my jurisdiction.[2] The Commissioner has answered[3] and filed the transcript of the administrative record.[4]

Under the requirements of my initial[5] and procedural[6] orders, the parties have briefed their positions[7] and filed supplemental charts[8] and the fact sheet.[9] Although the matter was initially set for a telephonic oral argument, I have determined that it may be adjudicated on the briefs, charts, and other submissions.

---

[1] ECF # 1.

[2] ECF # 10.

[3] ECF # 5.

[4] ECF # 6.

[5] ECF # 3.

[6] ECF # 7.

[7] ECF # 13 (Luck's brief), ECF # 19 (Commissioner's brief).

[8] ECF # 16 at 5-11 (Luck's charts), ECF # 19-1 (Commissioner's charts).

[9] ECF # 16 at 1-4 (Luck's fact sheet).

**B.**     **The Commissioner's decision**

Luck, who was 44 years old at the time of the hearing,[10] completed two years of business college[11] and now lives with her husband and children.[12] Although she has worked more or less consistently from 1992 to 2007 at various jobs, she was most recently a waitress from 2001 to 2007.[13] She maintains that she injured her back while working as a waitress in 2006[14] and stopped working completely in 2007 as a consequence of that injury.[15]

The Administrative Law Judge ("ALJ") found that Luck had the following severe impairments: degenerative disc disease, disorders of the back, lumbar disc placement, lumbar spinal stenosis, migraine headaches, affective disorder, dysthymic disorder, and adjustment disorder with mixed emotional features.[16] After evaluating the impairments, including the mental impairment, under the applicable listings, the ALJ decided that none of the relevant impairments nor any combination of impairments met or equaled a listing.[17]

---

[10] ECF # 6, Transcript of Proceedings ("Tr.") at 139.

[11] *Id.* at 165, 173.

[12] *Id.* at 44.

[13] *Id.* at 156-57, 179.

[14] *Id.* at 47.

[15] *Id.*

[16] *Id.* at 21.

[17] *Id.* at 22-23.

-3-

The ALJ then made the following finding regarding Luck's residual functional capacity:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that she: can engage in postural limitations of only occasional stooping and crouching, and no climbing of ladders, ropes or scaffolds. She requires work with only occasional decision making required and only occasional changes in the work setting.[18]

Based on that residual functional capacity and on the record as whole, a vocational expert ("VE") initially testified that Luck had past relevant work as a restaurant waitress, which the VE further testified was semi-skilled work done at the light exertional level.[19] The VE then testified that given Luck's RFC and the nature of Luck's relevant past work as a waitress, Luck was capable of performing her past relevant work as a waitress. Thus, the ALJ then found Luck capable of her past relevant work as a waitress and, therefore, not under a disability.[20]

The Appeals Council denied Luck's request for review of the ALJ's decision.[21] With this denial, the ALJ's decision became the final decision of the Commissioner.[22]

---

[18] *Id.* at 23.

[19] *Id.* at 31.

[20] *Id.*

[21] *Id.* at 1-5.

[22] *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 648 (6th Cir. 2011); 20 C.F.R. § 404.981.

## C.    Issues presented

Luck asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Luck presents the following issues for judicial review:

- The ALJ assigned the opinion of multiple treating physicians "not significant" or "little" weight. He gave state agency reviewing sources' opinions "great weight." Did the ALJ properly analyze and weigh the opinions of the various medical sources under the regulations, and do good reasons support the weight assigned and then does substantial evidence support the resulting RFC determination?[23]

- The ALJ found Luck's complaints about the severity of her impairments and the extent of her limitations credible only to the extent consistent with his residual functional capacity finding. Does substantial evidence support this finding?[24]

## D.    Disposition

For the reasons that follow, I conclude that the ALJ's finding that Luck is not disabled has the support of substantial evidence. The denial of Luck's application will be affirmed.

# Analysis

## A.    Standards of review

### 1.    *Substantial evidence*

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

---

[23] ECF # 13 at 7-18.

[24] *Id.* at 18-20.

Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[25]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner survives "a directed verdict" and wins.[26] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[27]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

---

[25] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

[26] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06cv403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[27] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

-6-

## 2.    *Treating physician rule and good reasons requirement*

The regulations of the Social Security Administration require the Commissioner to give more weight to opinions of treating sources than to those of non-treating sources under appropriate circumstances.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.[28]

If such opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record," then they must receive "controlling" weight.[29]

The ALJ has the ultimate responsibility for determining whether a claimant is disabled.[30] Conclusory statements by the treating source that the claimant is disabled are not entitled to deference under the regulation.[31]

The regulation does cover treating source opinions as to a claimant's exertional limitations and work-related capacity in light of those limitations.[32] Although the treating

---

[28] 20 C.F.R. § 404.1527(d)(2).

[29] *Id.*

[30] *Schuler v. Comm'r of Soc. Sec.*, 109 F. App'x 97, 101 (6th Cir. 2004).

[31] *Id.*

[32] *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 991 (N.D. Ohio 2003), citing *Green-Younger v. Barnhart*, 335 F.3d 99, 106-07 (2nd Cir. 2003).

source's report need not contain all the supporting evidence to warrant the assignment of controlling weight to it,[33] nevertheless, it must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" to receive such weight.[34] In deciding if such supporting evidence exists, the Court will review the administrative record as a whole and may rely on evidence not cited by the ALJ.[35]

In *Wilson v. Commissioner of Social Security*,[36] the Sixth Circuit discussed the treating source rule in the regulations with particular emphasis on the requirement that the agency "give good reasons" for not affording controlling weight to a treating physician's opinion in the context of a disability determination.[37] The court noted that the regulation expressly contains a "good reasons" requirement.[38] The court stated that to meet this obligation to give good reasons for discounting a treating source's opinion, the ALJ must do the following:

- State that the opinion is not supported by medically acceptable clinical and laboratory techniques or is inconsistent with other evidence in the case record.

- Identify evidence supporting such finding.

---

[33] *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).

[34] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001).

[35] *Id.* at 535.

[36] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004).

[37] *Id.* at 544.

[38] *Id.*, citing and quoting 20 C.F.R. § 404.1527(d)(2).

-8-

- Explain the application of the factors listed in 20 C.F.R. § 404.1527(d)(2) to determine the weight that should be given to the treating source's opinion.[39]

The court went on to hold that the failure to articulate good reasons for discounting the treating source's opinion is not harmless error.[40] It drew a distinction between a regulation that bestows procedural benefits upon a party and one promulgated for the orderly transaction of the agency's business.[41] The former confers a substantial, procedural right on the party invoking it that cannot be set aside for harmless error.[42] It concluded that the requirement in § 1527(d)(2) for articulation of good reasons for not giving controlling weight to a treating physician's opinion created a substantial right exempt from the harmless error rule.[43]

The Sixth Circuit in *Gayheart v. Commissioner of Social Security*[44] recently emphasized that the regulations require two distinct analyses, applying two separate standards, in assessing the opinions of treating sources.[45] This does not represent a new interpretation of the treating physician rule. Rather it reinforces and underscores what that

---

[39] *Id.* at 546.

[40] *Id.*

[41] *Id.*

[42] *Id.*

[43] *Id.*

[44] *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (2013).

[45] *Id.* at 375-76.

court had previously said in cases such as *Rogers v. Commissioner of Social Security*,[46] *Blakley v. Commissioner of Social Security*,[47] and *Hensley v. Astrue*.[48]

As explained in *Gayheart*, the ALJ must first consider if the treating source's opinion should receive controlling weight.[49] The opinion must receive controlling weight if (1) well-supported by clinical and laboratory diagnostic techniques and (2) not inconsistent with other substantial evidence in the administrative record.[50] These factors are expressly set out in 20 C.F.R. §-404.1527(d)(2). Only if the ALJ decides not to give the treating source's opinion controlling weight will the analysis proceed to what weight the opinion should receive based on the factors set forth in 20 C.F.R. §§ 404.1527(d)(2)(i)-(ii), (3)-(6).[51] The treating source's non-controlling status notwithstanding, "there remains a presumption, albeit a rebuttable one, that the treating physician is entitled to great deference."[52]

The court in *Gayheart* cautioned against collapsing these two distinct analyses into one.[53] The ALJ in *Gayheart* made no finding as to controlling weight and did not apply the

---

[46] *Rogers*, 486 F.3d at 242.

[47] *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406-07 (6th Cir. 2009).

[48] *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009).

[49] *Gayheart*, 710 F.3d at 376.

[50] *Id.*

[51] *Id.*

[52] *Rogers*, 486 F.3d at 242.

[53] *Gayheart*, 710 F.3d at 376.

standards for controlling weight set out in the regulation.[54] Rather, the ALJ merely assigned the opinion of the treating physician little weight and explained that finding by the secondary criteria set out in §§ 1527(d)(i)-(ii), (3)-(6) of the regulations,[55] specifically the frequency of the psychiatrist's treatment of the claimant and internal inconsistencies between the opinions and the treatment reports.[56] The court concluded that the ALJ failed to provide "good reasons" for not giving the treating source's opinion controlling weight.[57]

> But the ALJ did not provide "good reasons" for why Dr. Onady's opinions fail to meet either prong of this test.

> To be sure, the ALJ discusses the frequency and nature of Dr. Onady's treatment relationship with Gayheart, as well as alleged internal inconsistencies between the doctor's opinions and portions of her reports. But these factors are properly applied only after the ALJ has determined that a treating-source opinion will not be given controlling weight.[58]

In a nutshell, the *Wilson/Gayheart* line of cases interpreting the Commissioner's regulations recognizes a rebuttable presumption that a treating source's opinion should receive controlling weight.[59] The ALJ must assign specific weight to the opinion of each treating source and, if the weight assigned is not controlling, then give good reasons for not

---

[54] *Id.*

[55] *Id.*

[56] *Id.*

[57] *Id.*

[58] *Id.*

[59] *Rogers*, 486 F.3d 234 at 242.

giving those opinions controlling weight.[60] In articulating good reasons for assigning weight other than controlling, the ALJ must do more than state that the opinion of the treating physician disagrees with the opinion of a non-treating physician[61] or that objective medical evidence does not support that opinion.[62]

The failure of an ALJ to follow the procedural rules for assigning weight to the opinions of treating sources and the giving of good reason for the weight assigned denotes a lack of substantial evidence even if the decision of the ALJ may be justified based on the record.[63] The Commissioner's *post hoc* arguments on judicial review are immaterial.[64]

Given the significant implications of a failure to properly articulate (*i.e.*, remand mandated by the *Wilson* decision), an ALJ should structure the decision to remove any doubt as to the weight given the treating source's opinion and the reasons for assigning such weight. In a single paragraph the ALJ should state what weight he or she assigns to the treating source's opinion and then discuss the evidence of record supporting that assignment. Where the treating source's opinion does not receive controlling weight, the decision must justify the assignment given in light of the factors set out in §§ 1527(d)(1)-(6).

---

[60] *Blakley*, 581 F.3d at 406-07.

[61] *Hensley*, 573 F.3d at 266-67.

[62] *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551-52 (6th Cir. 2010).

[63] *Blakley*, 581 F.3d at 407.

[64] *Wooten v. Astrue*, No. 1:09-cv-981, 2010 WL 184147 (N.D. Ohio Jan. 14, 2010).

The Sixth Circuit has identified certain breaches of the *Wilson* rules as grounds for reversal and remand:

- the failure to mention and consider the opinion of a treating source,[65]

- the rejection or discounting of the weight of a treating source without assigning weight,[66]

- the failure to explain how the opinion of a source properly considered as a treating source is weighed (*i.e.*, treating v. examining),[67]

- the elevation of the opinion of a nonexamining source over that of a treating source if the nonexamining source has not reviewed the opinion of the treating source,[68]

- the rejection of the opinion of a treating source because it conflicts with the opinion of another medical source without an explanation of the reason therefor,[69] and

- the rejection of the opinion of a treating source for inconsistency with other evidence in the record without an explanation of why "the treating physician's conclusion gets the short end of the stick."[70]

The Sixth Circuit in *Blakley*[71] expressed skepticism as to the Commissioner's argument that the error should be viewed as harmless since substantial evidence exists to

---

[65] *Blakley*, 581 F.3d at 407-08.

[66] *Id.* at 408.

[67] *Id.*

[68] *Id.* at 409.

[69] *Hensley*, 573 F.3d at 266-67.

[70] *Friend*, 375 F. App'x at 551-52.

[71] *Blakley*, 581 F.3d 399.

-13-

support the ultimate finding.[72] Specifically, *Blakley* concluded that "even if we were to agree that substantial evidence supports the ALJ's weighing of each of these doctors' opinions, substantial evidence alone does not excuse non-compliance with 20 C.F.R. § 404.1527(d)(2) as harmless error."[73]

In *Cole v. Astrue*,[74] the Sixth Circuit reemphasized that harmless error sufficient to excuse the breach of the treating source rule only exists if the opinion it issues is so patently deficient as to make it incredible, if the Commissioner implicitly adopts the source's opinion or makes findings consistent with it, or if the goal of the treating source regulation is satisfied despite non-compliance.[75]

*3.     Credibility*

In articulating reasons for discounting a claimant's credibility, the ALJ must provide enough of an assessment to assure the reviewing court that he or she has considered the relevant evidence and be specific enough to permit the court to trace the path of the ALJ's reasoning.[76]

---

[72] *Id*. at 409-10.

[73] *Id*. at 410.

[74] *Cole v. Astrue*, 661 F.3d 931 (6th Cir. 2011).

[75] *Id.* at 940.

[76] *Cross v. Comm'r of Soc. Sec*., 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005).

As the Social Security Administration has recognized in a policy interpretation ruling on assessing claimant credibility,[77] in the absence of objective medical evidence sufficient to support a finding of disability, the claimant's statements about the severity of his or her symptoms or limitations will be considered with other relevant evidence in deciding disability:

> Because symptoms, such as pain, sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, the adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements if a disability determination or decision that is fully favorable to the individual cannot be made solely on the basis of objective medical evidence.[78]

The regulations also make the same point.

> We must always attempt to obtain objective medical evidence and, when it is obtained, we will consider it in reaching a conclusion as to whether you are disabled. However, we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work ... solely because the available objective medical evidence does not substantiate your statements.[79]

Under the analytical scheme created by the Social Security regulations for determining disability, objective medical evidence constitutes the best evidence for gauging a claimant's residual functional capacity and the work-related limitations dictated thereby.[80]

---

[77] Social Security Ruling (SSR) 96-7p, Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, 61 Fed. Reg. 34483 (July 2, 1996).

[78] *Id.* at 34484.

[79] 20 C.F.R. § 416.929(c)(2).

[80] *Swain*, 297 F. Supp. 2d at 988-89.

-15-

As a practical matter, in the assessment of credibility, the weight of the objective medical evidence remains an important consideration. The regulation expressly provides that "other evidence" of symptoms causing work-related limitations can be considered if "consistent with the objective medical evidence."[81] Where the objective medical evidence does not support a finding of disability, at least an informal presumption of "no disability" arises that must be overcome by such other evidence as the claimant might offer to support his claim.

The regulations set forth factors that the ALJ should consider in assessing credibility. These include the claimant's daily activities; the location, duration, frequency, and intensity of the pain; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of medication; and treatment or measures, other than medication, taken to relieve pain.[82]

The specific factors identified by the regulation as relevant to evaluating subjective complaints of pain are intended to uncover a degree of severity of the underlying impairment not susceptible to proof by objective medical evidence. When a claimant presents credible evidence of these factors, such proof may justify the imposition of work-related limitations beyond those dictated by the objective medical evidence.

The discretion afforded by the courts to the ALJ's evaluation of such evidence is extremely broad. The ALJ's findings as to credibility are entitled to deference because he has

---

[81] 20 C.F.R. § 404.1529(c)(3).

[82] 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii).

the opportunity to observe the claimant and assess his subjective complaints.[83] A court may not disturb the ALJ's credibility determination absent compelling reason.[84]

## B.    Application of standards

Luck objects to the weight given to treating sources and to her own credibility, although the treating sources objection has several aspects that must be addressed separately. In addition, Luck raises a question about the ALJ assigning greater weight to the opinions of the consultative examining psychologist over the treating sources.

### 1.    *Opinions of acceptable medical sources*

First, Luck argues that the ALJ erred in not assigning controlling weight "to the uncontradicted opinions of Drs. Hickey, Elgafy, and Bassett."[85] Each of these medical sources is a physician, which is an acceptable medical source under the regulations. Further, Drs. Hickey, Elgafy, and Bassett all have an extensive history of treating Luck[86] and so would be treating physicians whose opinions would be entitled to controlling weight unless good reasons were given for doing otherwise.

---

[83] *Buxton*, 246 F.3d at 773.

[84] *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).

[85] ECF # 13 at 12.

[86] Donald Hickey, M.D. is a family practice physician with treatment records for Luck from November 2008 to June 2011 (Tr. at 273-79, 448-49, 542, 569-72, 574-75); Hossein Elgafy, M.D. is an orthopedic surgeon with treatment records for Luck from August 2008 to September 2011 (Tr. at 255, 258, 260-61, 263, 265, 282, 284-85, 289, 594); James Bassett, M.D. is a pain management specialist with treatment records for Luck from July to August 2010 and August 2011 (Tr. at 439-42, 591-92).

-17-

In addition, I note that the opinions involved here are all comments on the "nature and severity" or "prognosis" of Luck's impairments, rather than statements on what she could still do despite the impairments – *i.e.*, functional capacity opinions. As such, these "nature and severity" or "prognosis" opinions are largely contained within various treatment notes from individual visits and not presented in any single unified evaluation. Accordingly, these opinions are not static and consistent but manifest changing views over time.

## 2.    *Acceptable medical source opinions/physical impairments not related to migraines*

The ALJ here very explicitly discusses the changes over time in the "nature and severity" opinions of Dr. Elgafy, Dr. Hickey, and Dr. Bassett, with specific notations to where those changes reflect clear improvements in the "nature and severity" of Luck's conditions not related to migraines.[87] In particular, the ALJ states that over a month period in 2009, Dr. Elgafy's opinion was that the severity of Luck's symptoms improved, with his treatment notes recording "'good results with conservative treatment," which he then corroborated with "improved objective findings upon physical examination."[88] Similarly, as to Dr. Hickey, the ALJ's opinion states that Dr. Hickey's treatment notes record improvement in the severity of Luck's symptoms between November 2008 and March 2011, with the final observation that Luck herself reported at the 2011 examination with Dr. Hickey that she was feeling better.[89]

---

[87] Tr. at 24-25.

[88] *Id.* at 25 (citing record).

[89] *Id.* (citing record).

-18-

Most significantly, the ALJ extensively discusses the improvement in severity of symptoms contained in the notes of Dr. Bassett, with particular attention paid to the "significant improvement" in symptoms Dr. Bassett recorded after three weeks of treatment following Luck's 2011 re-occurrence of lower back pain.[90] Indeed, the ALJ noted that this significant improvement subsequent to the August 2011 re-injury meant that although Dr. Elagafy had recommended another microdiscectomy, Luck's capacity to function after that August 2011 event was not more limited. The ALJ supported that functional finding with objective treatment records from Dr. Bassett on August 17, 2011, which found "full strength in all muscle groups," a "normal sensory examination," no positive straight leg raise, although Luck still had "some [pain] radiation into her right thigh."[91] Further, the ALJ noted that Dr. Elgafy's treatment notes following the August event showed multiple instances where objective tests disclosed no functional limitations.[92]

Thus, as demonstrated above, the ALJ's analysis of these "nature and severity" opinions of Drs. Elgafy, Hickey, and Bassett not related to migraines is detailed and specific, with clear citations to those portions of the record supporting the quoted opinion. While the ALJ's opinion would have benefitted from stricter conformity with the requirement of making an explicit statement acknowledging these sources as treating sources and then performing the analysis proper to such sources before ascribing a given weight to these

---

[90] *Id.*

[91] *Id.*

[92] *Id.* at 26 (citing record).

opinions, the error here was harmless since the opinion both makes findings consistent with those opinions and further satisfies the goal of the regulation by allowing for meaningful judicial review of the ALJ's analytic process.

**3.** *Acceptable medical source opinion/emotional/depression*

In addition to the sources dealing with physical impairments, Luck was treated by psychologist James Buldas, Ed.D. for adjustment disorder with mixed emotional features.

The ALJ noted first that although Dr. Buldas stated that Luck experiences "between one and two episodes of decompensation of extended duration,"[93] and so opined that she had been totally disabled since 2007,[94] there was no clinical record of those decompensations or of any related hospitalizations.[95] Thus, the ALJ concluded that "there have been no episodes of decompensation of extended duration" such as would enable Luck to meet the adult mental health listing at 12.00.[96]

The ALJ again extensively discussed Dr. Buldas later in the ALJ's opinion. Specifically, the ALJ took note that Dr. Buldas had provided a statement that Luck was disabled, and then observed that, although that issue is reserved for the Commissioner, and so opinions on that question "can never be entitled to controlling weight" because the opinion

---

[93] Tr. at 23.

[94] *Id.* at 618.

[95] *Id.* at 23.

[96] *Id.*

is from a treating source, it must nevertheless be carefully weighed in light of the other evidence of record to determine any appropriate weight.[97]

The ALJ declined to accord significant weight to Dr. Buldas's conclusory opinion.[98] Specifically, the ALJ noted that Dr. Buldas's own reports did not provide clinical support for his conclusion. He observed that while Dr. Buldas opined that Luck's depressive syndrome was marked by sleep disturbance, decreased energy, and difficulty concentrating, his treatment records show that she was reporting "'improved sleep patterns' and 'moderate progress' with using relaxation techniques and improved concentration."[99]

He also noted that Dr. Buldas's conclusion of total disability was inconsistent with the results of a mental function examination conducted by consultative examining psychologist Daniel Watkins, Ph.D.[100] In some detail, the ALJ reviewed the results of Dr. Watkins's examination, concluding that Dr. Watkins's ultimate assessment of Luck as having a GAF score of 60 indicated only mild symptoms, not total disability.[101]

Finally, the ALJ again commented that Dr. Buldas's "opinion [of total disability] is quite conclusory, providing very little explanation of the evidence relied on in forming his

---

[97] *Id.*

[98] *Id.* at 28.

[99] *Id.*

[100] *Id.* at 28-29.

[101] *Id.*

-21-

opinion."[102] The ALJ found that Dr. Buldas's recitation of various symptoms attributed to Luck's anxiety was not accompanied by any documentation in the record, but rather his "progress notes consistently reflect continued reports of improvement."[103] In that regard, the ALJ observed that Luck's own "reported daily and social activities do not corroborate [Dr. Buldas's] conclusions."[104]

Luck here does not dispute the fact that Dr. Buldas's treatment notes are as the ALJ characterizes them. Rather, Luck argues that the ALJ had no right to characterize Dr. Buldas's notes at all, since doing so was impermissibly "playing doctor" by substituting the ALJ's judgment as what those notes represent for Dr. Buldas's conclusion.[105]

In fact, the case authority cited by Luck emphasizes that the ALJ may not substitute his opinion for that of a medical professional "where the opinion of the treating physician is supported by the medical evidence"[106] and where the ALJ's judgment does not rely on "other evidence or authority in the record."[107] Far from being, as Luck seems to argue, a blanket condemnation of any disagreement by the ALJ with the opinion of a treating source grounded on that opinion's lack of support in the treatment record, the case law is clear that an ALJ

---

[102] *Id.*

[103] *Id.* at 29.

[104] *Id.*

[105] ECF # 13 at 13-16.

[106] *Meece v. Barnhart*, 192 F. App'x 456, 465 (6th Cir. 2006).

[107] *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000).

may justifiably point out, without incurring the criticism of playing doctor, that the medical opinion has no support in the medical record or that other evidence or authority in the record provides a basis for the ALJ's critique.

Here, the ALJ actually rested his analysis of Dr. Buldas's opinion on four distinct arguments: (1) there were no findings of "clinical or laboratory abnormalities" in Dr. Buldas's record;[108] (2) Dr. Buldas's own treatment notes contradict his conclusion; (3) Dr. Buldas's conclusory opinion is contradicted by the opinion of consultative examining psychologist Dr. Watkins, whose opinion is based on specific results of a mental status examination; and (4) that opinion is not corroborated by Luck's own daily and social activities.[109]

Even if the second reason – a perceived contradiction between Dr. Buldas's treatment notes and his opinion – puts the ALJ at risk of "playing doctor" by substituting his view of those notes for that of Dr. Buldas, the remaining three reasons have no such risk. It is not making an impermissible medical judgment to note that there is no evidence whatsoever for an opinion, nor is it improper to note that the opinion of consultative examining medical source is better supported in the evidence than that of a treating source and then to ascribe greater weight to the opinion of the non-treating source. [110]

_____

[108] Tr. at 18.

[109] *Id.*

[110] *Gayheart*, 710 F.3d at 379-80 (citations omitted).

Likewise, while the Sixth Circuit teaches that an ALJ may not "focus" on a claimant's ability to do certain things as providing a good reason for discounting a treating source's opinion,[111] the danger to be avoided in that instance is that an "ALJ's recitation of the claimant's daily activities [is] inconsistent with the record" and so cannot establish a proper basis for assessing the functional opinion at issue.[112] But absent the infirmity of a faulty description of the claimant's activities, it is well-recognized that an ALJ may consider a claimant's daily activities as among the reasons for discounting a treating source's opinion.[113]

Further, Luck also appears to argue that Dr. Buldas's opinion should receive greater weight because it formed the basis for an award of state workers' compensation benefits.[114] But as the ALJ pointed out, while that state decision is not binding on an ALJ, the ALJ must consider it and articulate reasons for the lesser weight assigned.[115] Here, the ALJ – by the above-noted discussion as to why the various opinions were weighed as they were – provided a clear statement of judicially reviewable reasons as to why the Ohio workers' compensation award was only accorded "little weight," since it was based on Dr. Buldas's opinion that was

---

[111] *Cole*, 661 F.3d at 939.

[112] *Engebrecht v. Colvin*, No. 12-11342, 2013 WL 4604597, at *22 (E.D. Mich. Aug. 29, 2013) (citing *Cole*, 661 F.3d at 939).

[113] *Id.* at *21 (citing *Helm v. Comm'r of Soc. Sec.*, 405 F. App'x 997, 1002 (6th Cir. 2011); *Kidd v. Comm'r of Soc. Sec.*, 283 F. App'x 336, 342 (6th Cir. 2008)).

[114] ECF # 13 at 14.

[115] Tr. at 29 (citing *Rothgeb v. Comm'r of Soc. Sec.*, 626 F. Supp. 2d 797, 809 (S.D. Ohio 2009) (citation omitted)).

not given significant weight, and was inconsistent with the other opinions that were afforded more weight for the reasons stated.

### 4.  *Other medical source opinions*

In addition to the above approved medical sources, Luck was treated by Mickey Frame, a chiropractor. Frame gave an opinion one week before the hearing that set restrictions on Luck's ability to sit and stand, and further offered the opinion that Luck was totally, permanently disabled from work.[116] While Luck accepts that Frame, as a chiropractor, is not an accepted medical source, she argues that he is "nevertheless competent to describe what [Luck] can and can't do," and so his RFC finding that Luck was limited to sedentary work should be given more than the "little weight" it was given by the ALJ.[117]

The ALJ here noted first that under Social Security regulations a chiropractor's opinion is not a treating source opinion and can never be entitled to controlling weight. He further observed that Frame's RFC opinion restricting Luck to sedentary work was not "substantiated by the objective medical evidence or his own progress notes."[118]

The objective medical evidence relied on by the ALJ is extensively discussed throughout this opinion. Frame's progress notes referenced here by the ALJ were earlier discussed briefly by the ALJ, who noted that Luck reported a continuing improvement of her

---

[116] *Id.* at 621.

[117] ECF # 13 at 12.

[118] Tr. at 29.

low back pain with Frame.[119] Indeed, an examination of those treatment records shows that Luck's self-reported pain improved from an 8 out of 10 to a 6 out of 10 in treatment with Frame.[120] Further, even at her worst point of an 8 level of pain, when Frame noted that "patient's response to treatment is slow,"[121] Luck informed Frame that she was unable to make an appointment for the next week because she would be gone on "a pre-planned vacation with husband."[122] Plainly, not objective evidence in support of a finding that Luck was totally and permanently disabled from work by disabling lower back pain.

In sum, the ALJ here was not required to analyze Frame's opinion under the rules for treating sources but "has the discretion to determine the appropriate weight to accord a chiropractor's opinion based on all the evidence in the record since a chiropractor is not a medical source."[123] As the Sixth Circuit noted in *Walters v. Commissioner of Social Security*, if a claimant offers the opinion of a chiropractor, the ALJ is not required to do more than consider it and weigh it along with all the other evidence in the record in making an evaluation of the claimant's condition.[124]

---

[119] *Id.* at 25 (citing record).

[120] *See*, *id.* at 471 (8 level at 8/24/11); at 599 (6 level at 9/28/11 – "getting improvement with treatment).

[121] *Id.* at 472.

[122] *Id.*

[123] *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530 (6th Cir. 1997) (citations omitted).

[124] *See*, *id.* at 530-31.

Thus, the ALJ's treatment of Frame's opinions is in accord with the applicable standard and provides no basis for remand.

### 5.    *Acceptable medical source opinions related to migraines*

As part of the argument that the ALJ failed to accord controlling weight to the opinions of treating physicians, Luck asserts that the ALJ failed to properly credit Dr. Hickey's opinions regarding her migraine headaches.[125]

Although the ALJ took notice of Luck's migraine headaches, and her assertion that these headaches occur three to four times a month for "up to a day or two" causing her to be "out,"[126] he then made no evaluation of those specific reported symptoms, either in light of any medical opinion or as part of an examination of Luck's credibility. To be sure, the ALJ discussed issues of pain and medication for pain management as they arose in the context of the physical lower back condition described above[127] and further discussed the functional limitations connected with depression and stress,[128] but the only reference to migraines is a comment, without citation to the record, that Luck "does use Imitrex for her migraines."[129]

As Luck's brief acknowledges, Dr. Hickey's treatment notes show both complaints about migraine headaches and accompanying nausea, as well as statements that the

---

[125] *See*, ECF # 13 at 11-12.

[126] Tr. at 24.

[127] *Id.* at 25, 27.

[128] *Id.* at 26-27.

[129] *Id.* at 27.

headaches and nausea were gone.[130] But, Luck contends, a fair reading of Dr. Hickey's "nature and severity" opinions indicates that throughout the treatment relationship, the migraines continued to be a problem.[131]

The Commissioner in her brief does not contend that the ALJ actually addressed the issue of any disabling effects from the migraines but argues that "the record does not contain any evidence that her migraines created functional limitations severe enough to warrant a reduction in the RFC finding."[132] In fact, the issue here is not whether a *de novo* search of the record will reveal any proof of additional functional limitations that could further restrict the RFC. Rather, the question is whether the RFC as actually found is supported by substantial evidence.

In that regard, the ALJ's analysis of Luck's complaint of disabling migraines is not highly developed nor easily reviewed. While it seems to infer that Luck's use of Imitrex is sufficient to manage any severe disabling symptoms from her migraines, the opinion does not say so. However, while Dr. Hickey's notes establish that Luck was being treated for migraines, nothing in his notes – nor in the notes of any other medical source – establishes their severity. Thus, Luck's very specific allegations of having disabling migraines up to four times a month during which she cannot leave the house for one or two days[133] are, in the end,

---

[130] ECF # 13 at 10.

[131] *Id.* at 10-11.

[132] ECF # 19 at 16.

[133] ECF # 13 at 11, 16 (citing record).

an issue going to her credibility. As such, that question, which is considered below, is for the ALJ to determine under the applicable standard and not one that can be resolved by an opinion from a medical source.

### 6.    *Credibility*

As stated above in the rubrics for assessing credibility, an ALJ may consider a claimant's daily activities as part of making a finding about a claimant's credibility.[134] Moreover, a claimant's credibility may be discounted when it is contradicted by the medical evidence and other evidence of record.[135] Stated differently, where there is substantial evidence to support an ALJ's functional capacity finding, there is substantial evidence to support a finding that the claimant – who argued for a more restrictive RFC – was not credible.[136]

Here, Luck essentially argues that her allegations of disabling pain are supported by different portions of the record than was cited by the ALJ,[137] whose reliance on her daily activities as being inconsistent with her pain allegation is undermined by his failure to describe with particularity what daily activities were inconsistent with the pain allegations.[138]

---

[134] *See*, *Felisky v. Bowen*, 35 F.3d 1027, 1037-38 (6th Cir. 1994).

[135] *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004).

[136] *See*, *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 287 (6th Cir. 2009).

[137] ECF # 13 at 20. (In finding her claims of pain not credible, "the administrative law judge pointed to various isolated treatment notations" of her treating sources.)

[138] ECF # 13 at 20 ("The administrative law judge gave no consideration to the totality of medical resources Ms. Luck sought to relieve her pain and its stressful results.")

-29-

For the reasons already documented above in the discussion concerning the lesser weight given to Luck's treating sources, the ALJ clearly set forth the reasons why those sources did not merit greater weight. It follows that if those sources are properly afforded only limited or no weight, that those sources then cannot be support for Luck's subjective complaints. To argue, as does Luck, that the mere fact that she kept returning to various sources for treatment necessarily proves that her complaints of pain were credible,[139] misses the point that while she may well have had continuous symptoms – a fact acknowledged by the ALJ [140]– the fact that she sought relief from those symptoms does not necessarily establish that they were severe enough to be disabling.

Further, it is incorrect to claim that the ALJ made no mention of the daily activities that he concluded were at variance with Luck's assertion of disabling pain.[141] The ALJ explicitly found that although Luck contended that she was unable to drive, she testified that she drove herself to the hearing.[142] Further, the ALJ found:

> She also reported to Dr. Frame that she was able to walk and drive without assistance. She reported [being able] to perform a full range of daily activities, including going on walks and going to church and the library. She is able to run errands and complete daily chores, including cooking, washing dishes,

---

[139] *Id.*

[140] *See*, Tr. at 26.

[141] ECF # 13 at 20 ("Nor did the ALJ describe what activities of daily living were inconsistent with Ms. Luck's experience of pain.").

[142] Tr. at 27.

dusting, sweeping, and doing the laundry, which indicates are (sic) greater ability to sit, lift, pull, walk, push, carry, and stand.[143]

In addition to this lengthy list of daily activities explicitly cited by the ALJ as contradicting a claim of disabling pain, the ALJ also noted that Luck's use of medication, as well as of more holistic treatment for pain, "suggests that her symptoms, including her pain, were not especially troublesome or as serious as she alleged."[144]

In sum, rather than supporting Luck's view that the ALJ's analysis of her pain allegation was "in error as a matter of law,"[145] the ALJ's opinion reflects conformity to the applicable law and is more than adequately supported by substantial evidence.[146]

## Conclusion

For the reasons stated, substantial evidence supports the finding of the Commissioner that Luck had no disability. Accordingly, the decision of the Commissioner denying Luck disability insurance benefits is affirmed.

IT IS SO ORDERED.

Dated: April 9, 2014                              s/ William H. Baughman, Jr.
                                                 United States Magistrate Judge

---

[143] *Id.*

[144] *Id.*

[145] ECF # 13 at 20.

[146] I also note that the ALJ here, despite finding Luck's complaints of disabling pain not credible, nevertheless fashioned a more restrictive RFC so as to "giv[e] the claimant every benefit of the doubt regarding her allegations of pain." Tr. at 28.